is number 25-2487, Timofey V and Anno Dialogue against the United States. Mr. Boyle. Thank you, Your Honor. May it please the court, my name is Dennis Boyle, and I represent the appellants, Timofey V and Anno Domino. I would like to request three minutes for rebuttal.  Thank you, Your Honor. We believe this is an interesting case on a number of issues, but there's a significant issue here at the beginning that we think trumps all others. And that is this website that was seized, this address that was seized is being withheld because of, under the International Emergency Economic Powers Act, the people who own the website are sanctioned as SDNs. However, a review of the record indicates that Timofey V is not sanctioned under the IEPA and has never been sanctioned under IEPA and is not sanctioned now. The record further indicates that he is the one to whom the address is registered. He's the one who paid for it. He's the one who used his own Russian bank account to make it. He's the one who presented his Russian. So what's the significance of this? Pardon? What is the significance of the factual points you're making right now? I think the significance of this is that he is the owner of the website, or at least an owner of the website. All right. But if everyone agrees to that, what difference does it make? The trouble you have, as I understand it, is what relief can you get from the district court in light of what OFAC has done about the special designations, the effect of all that has on him, right? Well, if he is the owner of it, he's not subject to IEPA or to the restriction on ownership of the site. But if the domain name is, then he can't get it back. But the domain name is not an SDN. Individuals are SDNs. The argument is that in order to return the property, it would require Verisign to provide an illegal service to Timothy Vey or whoever else you would want to return it to. That's the argument. I'm sorry, Your Honor. I didn't understand exactly. IEPA and the sanctions prohibit US persons from providing services to SDNs. The argument is that returning the property, the website, is not providing a service to dialogue. Absolutely, Your Honor. That's the issue you have. I think so. And I think that clearly returning the website to Timothy Vey, who is not an SDN, who is not on the list, is completely appropriate. But he's an employee of Dialog, and it would result in the argument. I'm just framing what I think is the real issue here. The argument is that it would still provide a service, directly or indirectly, to Dialog, which is an SDN, that by returning the property in that way, Verisign would violate the sanctions, would violate IEPA, and that we don't have the authority to grant that type of relief. I'm not trying to buy any of that, but I'm just setting it up so that you understand what we're really talking about here. And I completely understand that argument, and it makes sense. Part of the problem in this case is we don't have a hearing that was held to determine exactly what the facts were. We have assertions and affidavits submitted by both Anno Dialog and by Timothy Vey indicating that he was the owner of the website and that it would have been returned to him. Can you help me on a different factual issue? When was the last time that your clients heard from a federal prosecutor about this case? To my knowledge, my client has not heard from a federal prosecutor about this case. Have federal prosecutors contacted you? No, Your Honor. Do you have any indication that there actually is an ongoing investigation? My understanding from the documents that have been filed is that there is no ongoing prosecution. I think the government has asserted in its briefing that the problem is that they said investigation, not prosecution. Judge Bove said investigation, not prosecution. They've also said that the problem is they cannot return the website because of Anna Domino's status as an SDN. When the website was seized, when the domain name was seized, it was because of Mr. Karayenko's involvement with Anno Dialog, correct? Probably, yes, Your Honor. Karayenko had been listed and blocked. And that's correct. So now, by order of a judge here in the Eastern District, whoever it was, that directed the registrar to convey the name to the FBI, you want them now to move it to Timofey? That's correct, Your Honor. That's what you're asking for in your petition? That's correct. But Timofey is involved with the very company that Karayenko had been involved with when the domain name was seized. He may be involved in the company as an employee, along with multiple other reporters and other individuals. But the fact that he's involved in the company does not mean that he is the same as the SDN or that he has ever been sanctioned. I would submit that if there were- What case authority or statutory authority do you have to support the notion that a company that is, let's just call it the bad boy list to be blunt, keep it simple, where can an employee of a company on a bad boy list have property returned to it by virtue of the fact that he's an employee rather than the owner or the corporate entity? Is there any case or any statute that says that's allowed? I think that, yes, Your Honor, I think that IEPA itself allows that. It says- Where? Where? What language in IEPA allows that? Well, I think the salient fact, Your Honor, is that only SDNs are subject to seizure. Well, let me help. Have you applied for a license from OFAC? I do not believe a license has been applied for, Your Honor. Could you, if there was a court order directing that the property be returned, apply to a license to OFAC to facilitate that return? Certainly, Your Honor. Has a delisting petition been filed? Yes, Your Honor, a delisting petition could be filed. Has one been filed currently? No, Your Honor. And the district court sort of skidded past all of these nuances, right? Correct. Do you know if either of your clients have ever registered websites at offshore registrars? I do not know if they have or not, Your Honor. But offshore registrars would not be a violation of U.S. sanctions, would it, because they're not U.S. persons? I would believe they should not be a violation of U.S. sanctions. If they're located offshore and there's no U.S. individual involved, they could certainly do that. You make, if we were to think about the Fifth Circuit's Ritchie factors, you make some arguments about constitutional rights to your clients? Yes. Can you help us think about what the basis is for your clients in their particular situation even having constitutional rights is and how we should frame that? I think that if we look at 50 U.S.C. 1702 B.1, a section of the IEBA Act, it talks specifically about content-based restrictions on communications and makes it clear that the statute only applies to commercial transactions as opposed to the content of speech. But that gets you to, you know, that argument, if you are right, and I don't take a view right now, gets you to a place where you're defending against a criminal IEBA violation. It doesn't necessarily get you to a place where your clients have First Amendment rights that a district court should weigh in Ritchie analysis about the scope of its equitable jurisdiction. And I'm trying to understand what do those First Amendment rights look like for your client, Timothy, presumably sitting in Russia? Well, yes, your honor. I think that's a very good question. First Amendment rights apply within the United States. This website existed within the United States. Citizens of the United States. Do websites have First Amendment rights? I think the publishers of websites and what people put on websites. The corporation that owns the website or the person that owns the website, not the website itself. That's correct. OK, so who's the corporation that has the First Amendment right here? Out of dialogue? No, I think it would be Timothy Ray. Well, that's OK. That's not a corporation. You said he's an employee, not an owner of the website. You're saying that an employee of a website has First Amendment rights that are derivative of the website? I said he was, or I meant to say he was the owner of the website. If I misstated that, I'm sorry. So he's the owner of the website War on Fakes? Or who owns the domain name? Timothy Ray. OK. That's what we're talking about, the domain name. Correct. The difference between the domain name and the website. So you're saying he has a First Amendment right in the United States, even though he's a Russian national, because he owns a domain that was registered in the United States? Because the communications occur within the United States. OK, what case do you have for the proposition that foreign nationals have rights under the First Amendment to the United States Constitution if they engage in speech that transits the United States? I do not have a case to. Do you want us to be the first court ever to say that foreign nationals have First Amendment rights if they own domain names or websites that are accessible in the United States? That's a lot for me to ask, Your Honor. But I think that the fact of the matter is, I think that's. We need to ask it to win the case, right? I mean, that's what I'm getting at. Your Honor, I would say that within the United States, until fairly recently, freedom of speech was among the most paramount values that we've had. What has the Supreme Court done recently to undermine its strong stance in favor of freedom of speech? I don't think the Supreme Court has done anything. I think various administrations have targeted each other with content-based restrictions on speech. I would say that this, the application of the executive order. Well, the good news is the courts enforce the Constitution, not political bodies, right? So that's why we're here. But you've got to tell us why your client, who's not an American, isn't living in America, has rights under the United States Constitution. And I haven't, all I heard you say was that's a tall order. But I haven't heard an authority to support why we should take such a drastic step if no court has ever taken that step before. I think that it's not the client's First Amendment rights that are important as much as it is people's right to hear free speech. This speech is being made. All right, so it's not Timothy's right to speak. It's the American public's right to hear what he has to say. I think they're intertwined, but yes. All right, well, that's different, and that could be helpful. Did you make that argument in the district court, or did you make that argument in your brief? I don't know if I've heard that anywhere in this case until just now. I don't know that it's occurred anywhere until just now. We did make a First Amendment argument in the brief, and there is First Amendment rights. Well, the First Amendment argument in the brief was about the informational carve out to IEPA, correct? Yes. All right, and where in the district court did you make that argument? That was made in the petition itself that was filed initially. Can you cite that for us in the record, please? Did you actually cite in that petition a First Amendment argument as opposed to the statutory carve out? I think the First Amendment was cited. In the petition. To be honest, I did not draft the petition, and I only took the case on appeal. OK. Well, then the good news is if we find a forfeiture, it's someone else's fault, not yours. Well, that's not my argument. But it looks like a forfeiture, because as you heard in the prior case, we do have a very consistent jurisprudence on forfeiture. And I couldn't find anywhere in the record where the statutory carve out for information under IEPA was raised in the district court. I don't know if the specific language of the First Amendment was cited in the district court. Well, I'm talking about the carve out. The carve out was cited. The information, tell us where in the district court that was raised. I believe, Your Honor, there is a section of the petition the government has displayed a callous disregard for constitutional rights of petitioners. It talks in that section. This is paragraph 77 through I believe 84, and basically it focuses upon the search warrant and this fact that the search warrant is more of a, and I'll take that back, it appears to be more of a property rights sort of argument, more of a Fourth Amendment sort of argument. So I apologize to the court for misleading you. No, that's OK. I appreciate you looking that up. I just wanted to confirm I didn't miss it somewhere. However, the primary argument, Your Honor, would be concerning the ownership of the website, the lack of any hearing to flesh out those details. OK. All right, thank you. We'll hear you on rebuttal, Mr. Boyle. OK, thank you. Thank you. Mr. Finnegan. Good afternoon, Your Honors. May it please the court. Kyle Finnegan for the Appellee United States. This case arises out of the seizure of property located in the United States that was at one point in the past leased by a foreign national located overseas. Can you, just before we get into the factual representations, I just want to understand the basis for those representations right now. Have you reviewed OFAC's evidentiary packets for the SDN designations at issue in this case? I have not. When was the last time you spoke to a lawyer in AUSA about the criminal investigation that you referenced to the district court in Dallas? I've spoken recently with the agents who are on this case. And my understanding is that the case is still ongoing. Critically here, Investigation is ongoing. Yes, the investigation is still ongoing. There's no case. There hasn't been an indictment yet, right? That's correct. OK. And I don't see a lot of it. There hasn't been a forfeiture.  OK. This is an exceptionally complex case. How long can a situation like this go on before it becomes unreasonable? Well, I think here there is a difference because the criminal conduct here continues to be ongoing. There's no criminal conduct. There's at most some allegations. Well, the allegations that are described in the seizure affidavit, that conduct, which, you know, would be violations of OFAC, the provisioning of U.S. services. Violations of OFAC regulations are only criminal if there's evidence of willfulness. And there's barely a mention of Timothy Vey in that affidavit. Well, taking a step back, the seizure itself was not based on the violations that Timothy would have committed. It was international promotional money laundering with the OFAC violation as the specified on the IEPA violation as the SUA. Yes, but accepting that that violation, that was Kiryanko and Kiryanko's company, correct? If the violation is the provision of services and moving money from outside the United States into it for the benefit of Kiryanko. But if you guys are going to do anything with that. You have some offshore evidence, you have a report, cited in that affidavit two years ago. You've got an individual in Russia who you're never going to get. I don't see DOJ doing too many name and shame indictments lately. What are we to make of your representation that there's an ongoing investigation from some case agents recently? Well, I do want to also take a step back and note that where we are right now is just in the reasonableness analysis. I think that standing here is a very clean grounds on which this case can be resolved, but on the reasonableness. The district court didn't undertake a reasonableness analysis. The district court bought your argument that it would be somehow legally impossible to return this property to the petitioners. And so why would we do the reasonable analysis, fact bound as it is here? I don't think that the court should reach the reasonable now. Reasonableness analysis. I think that this is more cleanly resolved on standing grounds. So cases in this circuit and in 41G and other circuits have not always been clear. What is your standing argument? Yes. So the two factors that are discussed in most of the case law, the possession or ownership at the time of seizure and then the lawful entitlement to the property. Those map very cleanly onto injury, in fact, and redress. But they don't map very cleanly on the situations where there's pending OFAC sanctions, because Treasury's theory is that they are the SDNs are on an ongoing basis doing something that violates those sanctions. And so you and the district court, and I think you're getting ready to do it now, are going to make arguments about present tense connection between an SDN and this domain name that is completely inconsistent with OFAC sanctioning theory. Does Treasury know you're making these arguments here? Your Honor, I think the the redress ability prong is where this comes up. Right. So the district court here, when it was considering whether it could give the domain back, was considering whether the claims could be redressed, even if it were to consider all of the other arguments that appellants made in the district court below. If there was no situation in which it could give the domain back, that would be the same problem. I think it's. Is that your position? There's no situation. Perhaps there is one, but it's not anywhere present in the case here. I think this is. But that's the whole issue. It could be present in the case, couldn't it? The district court, if the district court had acknowledged the extent of its equitable authority, could it not have directed the Treasury Department to at least think about issuing a license to facilitate the return? Could it not have directed the Treasury Department to actually issue a license to facilitate a return? Were these not possibilities? I'm not familiar with any situations in which the courts have ordered OFAC or Treasury to take specific actions. We have a case dating back to 1985 that says the IRS can't thwart the return of property by liquidating a check. And I don't really see too much of a difference. There's some functional differences. But the concept is that district courts, when they're exercising equitable authority under 41G, have quite a bit. And so to resolve the case on a finding that it was impossible to have this property returned without even asking DOJ to investigate any of these possibilities seems like a real problem. Well, on the point of the exercise of the equitable authority, I think it is significant that appellants have not sought delisting at OFAC. Many of the cases. Why is that significant? Because I think it goes to their failure to prosecute these claims fully. I think many of the cases. Completely separate administrative action, administrative process at the Treasury Department has nothing to do with the 41G petition. Unless you want to explain to me why, why I'm wrong. Well, I think that would be just to go and allow them to be able to come back to the district court and make. You consider the possibility that the foreign nationals right now are baiting the Department of Justice and coming in here and telling us you guys that they don't control this website to facilitate a delisting petition because their position now can be in front of the Treasury Department. That DOJ's argument is that they don't control it anymore. That sounds like a pretty good delisting petition to me. Potentially, you know, appellants here have not made that argument. And even with any delisting petition, even if this court were to think that, you know, it could send back to the district court with an order to go to OFAC and say, consider this for delisting. There's still the standing issue of whether they have an injury in fact, because that only goes to redressability and whether the district court can order the domain to be transferred to Timothy. And so you still have the issue of whether they even had a possessory or an ownership interest at the time of the seizure. And that's not the case here. So with domain name registrations, ownership of the domain is not held by the individual registrant. It's held by the registry itself. And there was no there's nothing in the petition itself, even accepting all of it is true because because you have to. And there is something in the petition and in the subsequent litigation where Timothy says he's the one who leased it, provides the documents. I don't understand where this goes other than you asking us to engage in fact finding up here that the district court did not. There's no fact finding that's necessary, taking all of the inferences in favor of appellants here. He provides at 364 a copy of a one year registration from March 2022. The whole theory of your seizure was that the the possession by both of the petitioners was ongoing. That it had been used and it was involved in money laundering. And it is an instrumentality is being used present tense at the time of the seizure. The whole the whole theory of that seizure warrant is based on them having an interest in the domain. I don't know that that's spelled out exactly in the seizure warrant. I don't need you to spell it out for me. That is functionally the theory that you relied on to seize the domain. And now you're taking the position that they can't ask for it back at all. There was no hearing held. There was no evidentiary hearing held in this case by the district court. Was there? No, there was no facts that were found there. I don't believe that there's a need for an evidentiary hearing because taking Timothy Timothy alleges that he has an interest in it. Isn't that enough to show the possessory interest at this stage? No, because the documentation he provided was only showing a one year lease from March 2022 through 2023. And then single days. There's a later declaration at 761 in the record of his apparent registration on one date in December 2024 after the seizure and then one date in 2025. So there's still an 18 month gap between taking it in the light most favorable to appellants here, the later date of the original one year lease and when the government sees the domain. But doesn't the standing and merits issue merge in this case? And I mean, aren't we better off deciding this case on the merits as opposed to trying to decide the standing question? No, I don't believe so, Your Honor. You know, Article three is, of course, a threshold question that has to happen here. And I think thinking about appellants logic here really illuminates what the implications could be. So if a person who rents a car, for example, and does so for a week. Their lease or their registration ends, and then later the government comes in and seizes the car from the car rental company because it was maybe used by the renter for criminal activity. The logic of appellant's argument would be that anyone who ever leased that car would have the same interest and be able to come in the briefs. You argue that the domain was an instrumentality, not that it was evidence of a completed prior crime. Is it a different position now? Technically, that isn't the seizure theory in the warrant, that it was evidence of a completed crime, that it was property involved in involved the money present tense. I don't know that necessarily it was in that case, present tense. I think it had been certainly used, as the evidence points out. You know, this was a conglomeration of 32 Internet domains that were leased among three different entities, SDA, Structura and Dialogue in this case. But if you can't, if you had told the magistrate judge, if you told the judge that issued the warrant, our theory is that this is past tense evidence of a crime. The probable cause theory is different. That is not the position in the warrants. The position was this is these are representations you made to the court earlier in the case that that present tense. This is a website. This is a domain being used in connection with the crime. These are the petitioners now are the people that were the this central. These are the central allegations that it was ongoing. I believe under the money laundering theory, it would be sufficient to say that the property had been had been involved. I agree it would have been, but that is not what you did. I don't know that that final line is necessarily telling here, you know, is sufficient that if there was no lease and we don't think that there was after that initial one year with the we're not going to find those. You got one vote for not finding any facts up here. OK, so there's documents in the record that say this was current at the time of the seizure and ongoing. So stop with the aspersions about the facts. What is the legal argument that you're making? The legal argument is that they did not have a possessory interest. What different? I don't understand what difference it makes, whether Tim, if they had a possessory interest or not. I maybe I misunderstood your argument, but I thought your argument was that this domain name can't be returned because of the SDN and OFAC. That is one argument, Your Honor. That goes to the redress ability prong and whether. And if that's correct, it doesn't matter if Timothy owns the website, possesses it or doesn't. Right. That's correct. And any one of those three prongs for Article three standing would be. All right. And wasn't that the district court's focus? It was, Your Honor. OK. And one other thing I want to know. So so. Help me, then, if that argument doesn't work for you. Please explain why the possessory interest of Timothy is important for the other arguments, because that goes to whether he had a particularized injury in this case, so he would have a property right in the domain and then his property is being taken from him. Yes. And when someone is a registrant of a domain name, they have that temporary possessory interest for the period of the lease that they have. And you're claiming that if we look at the record carefully, the record does not prove that he had a possessory interest. At the at the time in question. That's correct. I'd point the court to. OK, but it's also consistent with what Judge Bovey was asking. It's also possible that the factual record has not been sufficiently determined. Particularly, we consider there was no hearing held in the district court. There is plenty of opportunity for appellants to file the documentation. They submit a documentation with their initial petition and in their response to affirmatively ask that there not be a hearing in the district court. That was an affirmative argument that this should be resolved without a hearing from the Department of Justice. That's correct, because I don't think that any of the documentation provided by appellants in the district court would be sufficient beyond just the bare allegations. They submitted at 364 a copy of a one year lease that started in 2022. All right, then do a counterfactual. What documents could they have submitted that would have torpedoed your argument? So the declaration, for example, at 761, which describes these additional days in December 2024 and in 2025, on which Timothy was purportedly the registrant for the domain name. If that had said that he has been the registrant since March 2022 to present, that would be a different case if it had said. Are you saying that's in dispute? I don't think that it's in dispute. I think if you look and take. There's a gap in the record on that. The record doesn't support him on that. But it's not clear that what's clear from your perspective is they didn't come forward with the evidence proving it. But that doesn't mean that they couldn't. It's if there if there were an evidentiary hearing, they had plenty of opportunities to submit that. And I think one of the reasons it's important to. All right, well, tell us, because we should ask Mr. Boyle about that. Tell us what evidence he needed to submit that would have torpedoed your argument that he didn't submit. Well, again, in terms of torpedoing the argument, this only goes to the injury in fact prong standing, to be clear. Right. So that could have been that he had he was the registrant at the time the domain was from the beginning and continuously. That's correct. If he was the registrant. That's correct. Or even on. And instead, he provided documents showing that he was only the registrant for a shorter period of time, an intermittent period of time. That's correct. And your argument is it wasn't the relevant period of time. Correct. Because he wasn't the registrant at the time the seizure occurred. Yes. And but then who on your theory, who was controlling the website at the time you told the court to ask the court to issue a warrant because the website was involved in ongoing promotional money laundering? Your Honor, I do believe that the seizure warrant here was that the theory was that these 32 Internet domains had been involved. This case is about one. Correct. I don't care about the other 31. What what possible argument could you have to detach that the possessor interest in the domain here when to get the warrant, you had to say that these were the people controlling the website, and that's why it's so problematic. The seizure theory, I believe, sets out that these were the individuals who had been controlling it and that it had been used in the money laundering. And then I think it's sufficient for the government. Tom, was the government concerned that that was no longer the case at the time the warrant was presented? I mean, you can't just say these things. I'm not exactly sure what happened at that time, but there is, as I mentioned, it appears that this campaign is still ongoing, involving all of these entities with the foreign malign influence. And I think that it's enough at the seizure stage for the government to be able to say. What is the. What is your individual basis to make that representation to us that there's a foreign malign influence campaign that's ongoing right now? What is your basis for that? I can back off of that at this point. Do you want to back off of it entirely? That's a pretty serious thing to say in a courtroom. I'm going to have the Department of Justice. No, I don't think we have to to reach out here because, again, it only goes to the reason you are going to retract that. But I just don't think that it's it's necessary. I didn't say that you said it.  But I just don't think we have to advance that point here because it would only go to the reasonableness, which has to do with the length of the seizure. And even if you were to get past the standing issue and look at the merits of the reasonableness, there are clear distinctions that that come through between cases in which seizures have been reasonable and those in which they are unreasonable. So one of the most relevant factors is whether the domain has been taken solely for evidentiary purposes. That was 608 Taylor. That was Lamplew, where there was no even idea that the property would be subject to forfeiture, let alone that returning the domain could be used by appellants again to, you know, continue to commit the conduct again. So if that's a risk, if that's true, doesn't that really undermine your argument that these were not the people controlling the website? How's that, Your Honor? If you think there's a risk that the return of property would allow this conduct to continue unabated, doesn't that really undermine your factual argument that these people did not actually control the website at the time of the seizure? I'm not I'm not sure I'm following the argument of that. They control it or they don't. And so if you're concerned that if we give it back to them, they'll resume the conduct, then it seems to me very inconsistent with you telling us that they don't actually control the website or there's not enough evidence that they control the website. It seems like the government's whole theory is that they control the website. Understood. It would always be possible to re-register with Reg.ru, which is the registrar in this case. There was nothing prior to the seizure that was preventing them from doing so. But the only difference right now is that the FBI is in possession of the domain from Verisign so that they could not re-register. Could they register this this domain using an offshore registrar? Yes. And so is that not another way that return of property is not impossible because the offshore registrar situation would not violate U.S. sanctions because there is no U.S. nexus? Well, so the theory here and I should be careful to distinguish between registrar and registry here. So the theory of the sanctions was that when Timothy or any other registrant paid to the registrar, in this case, Reg.ru, which is abroad, part of that payment would be going to Verisign, which is the money moving from outside the United States into the United States. So the appellants here would be free to... But Verisign, you're getting into a territory that I wanted to ask about earlier. Verisign is the U.S. company or it's a company headquartered in Reston, Virginia, anyways, whoever, whatever it is. It's the one who gave the war on fakes name to Reg.ru, right? Essentially, your honor. Yes. So yes, so Reg.ru transferred money from somewhere to this Reston, Virginia company. Correct. OK, now what you're saying is they could go offshore to another company that purported to sell domain names and buy a similar name. They could buy waronfakes.ru. The seizure theory here was very limited to the money coming into the United States here for a dot com domain name. So there is nothing that the government has done in its seizure warrant or with respect to OFAC sanctions that prevents any of the content on the war on fakes website from reaching the United States. All of those servers that actually contain the information remain. They can remain active if it were, if the traffic were just sent there from waronfakes.ru, that would not be reached by this narrow seizure warrant here. And I do want to also touch on some of the First Amendment arguments that that came up earlier. The Supreme Court has been clear that the First Amendment is not applicable to foreign nationals speaking abroad. And that's the case here. This is different from the TikTok executive order cases, for example, where there were 100 million individual listeners in the United States. And even if there were some sort of claim of a right to hear, that is not being filed here by a U.S. citizen. That would be a third party standing argument. So appellants wouldn't be able to invoke that either. Judge Hardeman, just to your last point, we do think that the informational materials argument was also forfeited below. All right. Thank you very much, Mr. Finnegan. We'll hear rebuttal from Mr. Boyle. Thank you, Your Honor. I think there are a couple of complicated issues here that sort of run together. The biggest problem, however, is that no hearing was ever held. Had that hearing been held, we believe the documents that were submitted, the comments by Timothy Frank, would have established standing beyond any doubt. But what happened was there was a seizure warrant. Then there was a petition to return the property under Rule 41. Then there was the assertion that the property could not be returned because of the SDN designation. Because of that designation under the SDN, the district court appears to have concluded that there was nothing more that it could do, that that was the end of the day. We would submit, however, that that is in fact not the case. Particularly since Timothy V. was not an SDN. He was not an SDN at the time of seizure. Neither was Anno Domino. He was not an SDN during the time of the litigation. He was not an SDN. He is not an SDN now. Since he's not an SDN, the AEPA doesn't really apply in this case. The question is whether there should have been a hearing under Rule 41 and whether we meet the standards for that. You know, I would cite the case, the United States versus Rickey, a Fifth Circuit case, 515 F. 2nd, 339. You know, it sets forth the five factors that are necessary for the court to exercise this equitable distribution. Simply stated, all of those factors occur. And if the court could have held a hearing, the court should have held a hearing. And our position is, Your Honor, that- What evidence would you have profited at the hearing that would have changed things? We would have profited the evidence that was the testimony to support the evidence submitted in the petition that the documents, and the documents, we would have indicated that there was no money laundering, that there was no connection with this website to the other websites. There was no connection to any laundering. We would have questioned the government on their money laundering investigation, what that investigation would have involved, whether there was ever going to be any charges- All right, those are all merits arguments. What documentary evidence or testimonial evidence would you proffer at that hearing to show that Timothy Vey has standing? We would have presented the document from per pre, registrar of domain names. I did not understand how the government was interpreting that until I just heard them on the record. But this is a document that was, you know, indicates that the domain name was registered to Timothy Vey on March 20th, 2025. It was filed with the court on March 21st, 2025. It was a document that was prepared within a week of when it was filed. If there was any other- When was the seizure of the domain? Pardon? When was the seizure of the domain? I don't recall the date of the seizure right now, but it was, I believe, in 2024. All right, well, how does a document showing that your client had the domain in March 21st, 2025, help you if the seizure had already occurred? Well, it shows that he also had the domain name in 2022 and in 2024. There's no indication that there was any period of time when he did not have the domain name. Where's the indication that he had it consistently from 2022 to 2025? Pardon? Where's the evidence that he consistently owned the domain name from 2022 to 2025? I think this document shows specific periods of time when the ownership was checked. Was that document attached to your petition? It was, yes, it was, Your Honor. It was attached in response to the government's response to our petition. No, it wasn't attached to the petition. It was attached, the petition itself said that Timothy V. was the owner of the domain and all relevant funds. What document did you attach it to? The document is called Petitioner's Response to United States of America's Motion to Dismiss. So it was provided by the court to show that there was at least a genuine issue of fact. In terms of how that document should be interpreted, I interpret it as being ownership throughout the whole period of time. And that's actually what Timothy V. said in his affidavit. I'm not aware of any evidence to show that there was any period of time when he did not own the document. So there was no, you agree there was no evidentiary hearing here. We know that. Correct. Was there an argument before the district court? I do not believe there was, Your Honor. This was done on paper? It was done on paper. I believe that the order of the court was one sentence long with a paragraph that's basically a page. So we would request that- So you want to remand so that this can be aired? The essence of your argument is here that the district court jumped the gun. We think that the district court may have been completely wrong. At the very least, the district court jumped the gun. I think there needs to be a full hearing. I think these facts have to be heard and decided before the court. But some things aren't going to change, right? I mean, the facts that won't change are that there was a seizure, that Kiryenko was designated. Those facts will not change. That Anno Dialogue was designated. And that Timothy worked for Anno Dialogue. He worked for Anno Dialogue. He was a reporter for Anno Dialogue. But that doesn't mean that's the only thing he did. It doesn't mean he had any connection with anybody else. But those things aren't going to change. And I'm struggling with how the domain name can be returned to anyone, Timothy Vey or anyone, if we stipulate the facts that I just mentioned. Because I think IEPA is a very narrow statute, and it only applies to specially designated nationals. I think that if Timothy... That's a... You might be right about that, but that's a legal argument. Yes. The IEPA carve-out for informational materials, that's a legal argument. What you just said about SDNs only being the ones affected, that's a legal argument. So I'm struggling. I don't like the fact that there wasn't a hearing here. I'll be blunt with you. I agree with you on that. But I'm struggling with why a hearing wouldn't be an idle exercise in light of what we know about the SDNs, OFAC, Anno Dialogue, Kiryanko, and the seizure. Those aren't going to change. Those things are not going to change. But what would change is the ability of the court to actually hear the witnesses and make credibility determinations based upon witnesses. What witnesses say. The credibility about what? I mean, let's assume for a minute that the seizure was totally inappropriate. Let's assume that the seizure of this website was a terrible government overreach. And let's also assume that it's unfair, as a matter of basic fairness, that your client hasn't been indicted. There's been no indictments. There's been no hearing. There's just the cloud of an investigation. Let's assume all of that's unfair. Under what legal authority does this domain name get returned to anyone? I think it gets returned under the theory that the original seizure of the domain was inappropriate and inaccurate. Was it possible that Timothy Vey would agree to not work for Dialogue anymore? He may not work for Dialogue anymore. I don't know. He could separate himself from the SDNs? Typically, reporters in Russia do separate themselves from sanctioned entities. What if he did that? Wouldn't it be easy just to file a paper to get the website, the domain name back? Yes, but then you would have to worry about the government just seizing it again. When they go back, he needs to get a license from OFAC. Well, he's not an SDN, so he can't get a license. Well, lawyers get licenses in order to- That is correct. Maybe I misspoke when I said that. He could get a license. These are all options that the district court had to facilitate the return of the property if the district court had considered them. I think the court is correct, yes. I see I'm out of time. Oh, well, we appreciate your stamina, Mr. Boyle. We appreciate Mr. Finnegan's stamina, and the court will take the matter under advisement. Thank you.